HOLLOWAY, Circuit Judge,
dissenting in part:
I.
I agree with the majority insofar as it holds that the plaintiffs, aside from Dr. Laughter, have not exhausted their administrative remedies. As to Dr. Laughter, however, I would hold that our precedent in Monreal v. Potter, 367 F.3d 1224 (10th Cir.2004), dictates that Dr. Laughter exhausted his administrative remedies as the class agent after 180 days passed from his filing the class administrative complaint. Moreover, unlike the majority, I would hold that Dr. Laughter’s subsequently withdrawing as the class agent and refiling as an individual complainant on the same day for the express purpose of continuing as an individual complainant did not vaporize his otherwise-achieved exhaustion or constitute “abandonment” of his individual administrative remedies.
II.
As the class agent, Dr. Laughter’s individual grievances were expressed in the class complaint, as they had to be for him to serve as the class agent. The majority order does not point to any evidence that Dr. Laughter or any of the class plaintiffs were dilatory or non-cooperative in responding to any of IHS or the EEOC’s requests for information in their investigation of their complaint. The administrative law judge had not issued a determination of whether to certify the class within 180 days, nor did the EEOC or IHS issue a determination on the merits of the class complaint.
More than 180 days after filing the class complaint, Dr. Laughter moved to withdraw his request for class certification and requested to proceed “on his own behalf and on behalf of others pursuant to 29 C.F.R. § 1601.7.” Aplt’s App. at 23.
III.
Here, the district court found that the EEOC took final action on July 22, 2008 when it dismissed the class complaint. Aplt’s App. at 157 (Order Granting Mot. Dismiss 7, Feb. 8, 2010). Moreover, the district court found that “this lawsuit is premised upon Dr. Laughter’s individual complaint which was not filed until July 22, 2008 — the same day his class complaint was dismissed.” Id. The district court held that therefore, “Dr. Laughter should have waited to file this suit until either the agency issued a final decision on his individual complaint or 180 days passed without any agency action.” Id.
The district court did not address our precedent which Dr. Laughter presented below in his district court briefing and that I consider to be controlling, Monreal v. Potter, 367 F.3d 1224 (10th Cir.2004). “The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.” Singleton v. Wulff, 428 U.S. 106, 121, 96 *688 S.Ct. 2868, 49 L.Ed.2d 826 (1976). “Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt ... or where ‘injustice might otherwise result.’ ” Id. (citing Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962), and quoting Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941)). I am convinced that the proper resolution of this issue is beyond doubt and that injustice might otherwise result were Dr. Laughter not to be allowed to proceed on his individual complaint, including the potential foreclosure of his ability to bring his employment discrimination claim despite having already exhausted his administrative remedies and having followed all of the required regulations and procedures.
IV.
“ ‘[Ejxhaustion of administrative remedies is a jurisdictional prerequisite’ to instituting a Title VII action in federal court.” Khader v. Aspin, 1 F.3d 968, 970-71 (10th Cir.1993) (citing Johnson v. Orr, 747 F.2d 1352, 1356 (10th Cir.1984)). “The existence of proper subject matter jurisdiction is a question of law which we review de novo.” Id. (citing Kiehn v. United States, 984 F.2d 1100, 1102 (10th Cir.1993); Bank of Okla. v. Muscogee (Creek) Nation, 972 F.2d 1166, 1168-69 (10th Cir.1992)). “The requirement that a Title VII claimant exhaust administrative remedies serves the purpose of ‘givfing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer. Good faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires.’” Id. (quoting Wade v. Secretary of Army, 796 F.2d 1369, 1377 (11th Cir.1986)).
At all times, Dr. Laughter’s argument has been that he exhausted his administrative remedies through the filing of the class administrative complaint on August 8, 2007. As the majority opinion notes, “[o]ne hundred and eighty days from that date is February 2008, which would render Dr. Laughter’s federal complaint in September 2008 timely.” Op. at 686. On this issue, our precedent in Monreal is instructive: a class agent can exhaust his individual administrative remedies through exhaustion of the class administrative remedies. 367 F.3d at 1231-32. As of February 2008, then, Dr. Laughter’s individual remedies were exhausted.
The majority holds that Dr. Laughter’s subsequent withdrawal as the class agent and refiling as an individual complainant reset the clock, ignoring his already-achieved exhaustion and requiring him to wait another 180 days before proceeding in district court. We note, however, that Dr. Laughter’s withdrawal as the class agent was effected on the same day as his refiling as an individual complainant, on July 22, 2008, in response to his express request to proceed as an individual.[1] On July 22, 2008, Dr. Laughter’s individual remedies were already exhausted. Given our precedent in Monreal, Dr. Laughter did not need to refile an individual administrative complaint.
The majority holds that Dr. Laughter’s withdrawal as the class agent and subsequent refiling as an individual complainant constituted an “abandonment” of his class administrative complaint, citing Khader for *689 the proposition that “[abandoning a complaint of discrimination filed with an employing agency prior to the agency’s final action on the complaint constitutes a failure to exhaust.” Op. at 686 (citing 1 F.3d at 971). In Khader, the plaintiff filed her formal complaint with the EEOC on October 28, 1988, alleging discrimination by the Army and Air Force Exchange Service (AAFES). 1 F.3d at 970. In November of 1988, David Frame, the deputy director of the AAFES EEO program, acknowledged receipt of Khader’s complaint and outlined her procedural rights. Id. In December of 1988, Frame requested additional information from Khader to assist in reviewing the merits of her complaint. Id. In March of 1989, Frame wrote again to Khader to let her know he had not yet received a response to his December 1988 request. Id. In a response dated March 28, 1989, Khader sent Frame a copy of a certified mail receipt showing that correspondence of some sort was delivered to AAFES on December 21, 1988, and also included a note saying, inter alia, “Screw you. See you in court.” Id. On May 22, 1989, Frame wrote to Khader again, indicating that Khader’s December correspondence had apparently been misplaced and requested a reply within 15 calendar days of Khader’s receipt of the letter. Id. Khader did not supply the requested information and, on June 6, 1989, filed her complaint in district court. Id. 180 days following the filing of Khader’s formal EEOC complaint would have been approximately April 28, 1989, thus her district court complaint, filed on June 6, 1989, would have been after the 180-day window. See 42 U.S.C. § 2000e-16(c).
Khader, however, is distinguishable on two grounds. First, the 180-day waiting period was not explicitly at issue in the court’s decision. Second, even if it were, Khader effectively aborted the agency’s investigation prior to the 180-day waiting period’s running by sending her note of March 28, 1989, and by refusing to resubmit information requested by the agency. 1 F.3d at 970. Our court noted that while it “appreciate[d] Khader’s frustration upon learning that her materials had been misplaced by the [agency personnel], ‘impatience with the agency does not justify immediate resort to the courts.’ ” Id. at 971 (quoting Rivera v. U.S. Postal Service, 830 F.2d 1037, 1039 (9th Cir.1987), superseded by 29 C.F.R. § 1613.513 (1987), as stated in Bak v. Postal Service, 52 F.3d 241, 243-44 (9th Cir.1995)). Thus, by abandoning her administrative complaint prior to the 180-day period running and failing to cooperate with Frame’s requests, Khader failed to exhaust her administrative remedies. Unlike Khader, however, Dr. Laughter’s individual administrative remedies were already exhausted when he filed suit in district court.
In addition, Rivera, the Ninth Circuit case relied upon by Khader, involved a plaintiff who had filed an administrative appeal from an adverse decision by the Postal Service. 830 F.2d at 1038. The Ninth Circuit held that once the Rivera plaintiff had entered into the administrative appeal, he was statutorily bound by 42 U.S.C. § 2000e-16(c) to wait 180 days or until the EEOC issued its decision before filing suit in district court. Id. at 1039. This was true even though had Rivera not appealed to the EEOC, he could have directly filed suit in district court to contest the Postal Service’s decision. Id. Thus, both Khader and Rivera involved situations where administrative proceedings were underway and the respective plaintiffs’ “impatience” with the process resulted in “abandonment” of the administrative process, followed by filing complaints in district court before they exhausted their administrative remedies. In the instant case, however, Dr. Laughter had already *690 exhausted his individual remedies as the class agent after 180 days following his filing of the class administrative complaint. At all times, his actions, including the simultaneous withdrawal of the class complaint and filing of his individual complaint, could objectively be viewed as pursuing his claims of discrimination whether as the class agent or as an individual. This hardly constitutes abandonment.
Indeed, the two rationales identified by Monreal in support of requiring exhaustion, protecting administrative agency authority and promoting judicial efficiency, 367 F.3d at 1233, both support allowing Dr. Laughter to proceed. Dr. Laughter fully respected agency authority by waiting 180 days after filing his class complaint before taking any action in district court. Moreover, IHS and the EEOC were both on notice as to the nature of his claims through his individual counseling session on April 27, 2007, and presumably through the EEO Class Counseling Report.[2] IHS and the EEOC had 180 days to investigate his complaints and those of the class, after which he could file suit in district court. There was no evidence of non-cooperation as in Khader, nor did Dr. Laughter appeal a decision for which he had to await a decision as in Rivera. See also Munoz v. Aldridge, 894 F.2d 1489, 1493 (5th Cir. 1990) (“Where, as here, a case languishes in the administrative phase for long beyond 180 days, indeed without activity for over 180 days, we cannot say that abandoning the administrative process constitutes such a lack of cooperation as to bar suit by reason of failure to exhaust administrative remedies.”); Wade, 796 F.2d at 1378 (11th Cir.1986) (“[Ujpon determining that the employee in fact complied with the regulations ... and that the agency therefore rejected the individual or class complaint without cause, the court should not direct the employee or class agent to return to the agency to give the agency a second opportunity to resolve the dispute but should conclude that administrative remedies are exhausted and go on to try all issues in the case on their merits.”).
Similarly, allowing Dr. Laughter’s complaint to proceed would promote judicial efficiency. For example, assuming without deciding or agreeing with the district court’s finding that “the EEOC took final action on July 22, 2008 when it dismissed the class complaint,” Aplt’s App. at 157, 29 C.F.R. § 1614.407(b) would require Dr. Laughter and the class plaintiffs to file a district court complaint within 90 days of that decision. This conflicts with the district court’s mandate that Dr. Laughter wait 180 days from that same date before filing an individual complaint. As Dr. Laughter argues and as Monreal pointed out, “requiring separate exhaustion of the class allegations and the class agent’s individual allegations that form the basis of the class allegations could create conflicting deadlines for filing a civil action such that all the deadlines could not be satisfied.” 367 F.3d at 1234 (citation omitted).
Importantly also, as the class agent, Dr. Laughter had satisfied the counseling requirements prior to filing a complaint. He followed all of the regulations and dictated procedures. He withdrew the class complaint only to proceed as an individual, not to “abandon” the process. Dr. Laughter’s is not a situation where he decided that his individual complaint had no merit and thus abandoned it, only to change his mind later and seek refiling. Nor is it a situation where he attempted to short-circuit the administrative process. Requiring him to reset the clock on his individual complaint would be prejudicial insofar as it serves no *691 purpose except as an additional hurdle that he has already satisfied.
Thus, I would reverse the district court’s holding as to Dr. Laughter’s individual complaint. I would remand to the district court for further proceedings on his complaint, and for the district court to determine which of Dr. Laughter’s co-plaintiffs could proceed under the Single Filing Rule. Accordingly, I must respectfully dissent in part.

. The Memorandum Opinion and Order of the Federal District Court recognized this critical sequence of events. Aplt’s App. at 152.

. Laughter cited the EEO Class Counseling Report in the Class Administrative Complaint, Aplt's App. at 18, but does not appear to have included it in the appellate record.